## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WESTFIELD INSURANCE** | : | |
| **COMPANY,** | : | **No. 1:23-cv-00784** |
| **Plaintiff** | : | |
| | : | **(Judge Kane)** |
| **v.** | : | |
| | : | |
| **HARRY ARNOLD,** | : | |
| **Defendant** | : | |

### MEMORANDUM

Before the Court is Plaintiff Westfield Insurance Company ("Plaintiff")'s motion for default judgment against Defendant Harry Arnold ("Defendant"). (Doc. No. 9.) For the reasons that follow, the Court will grant Plaintiff's motion and enter default judgment against Defendant and in favor of Plaintiff.

### I.    BACKGROUND

On April 5, 2023, non-parties Ernest Singer and Linda Singer (the "Non-Parties") filed a complaint against Defendant "in the Court of Common Pleas of Cumberland County at docket number 2023-02920." (Doc. No. 1 ¶¶ 11–12.) The Non-Parties allege that Defendant negligently and recklessly shoved Ernest Singer to the floor, seriously and permanently injuring him. (Doc. No. 1-2 ¶¶ 8–9.) Pursuant to an insurance policy that covers "damages because of bodily injury, property damage or personal injury caused by an [accident]" (Doc. No. 1-5 at 48, 50), Plaintiff is currently defending Defendant in the underlying action, subject to a full reservation of rights (Doc. No. 1 ¶ 32).

Plaintiff initiated the above-captioned declaratory judgment action on May 11, 2023, seeking a declaration that it "has no duty to defend or indemnify [Defendant] in connection with the civil action filed against him by Ernest Singer in the Court of Common Pleas of Cumberland County[.]" (Doc. No. 1.) To this end, Plaintiff's complaint advances three counts, each

asserting a separate basis for why Defendant's conduct falls outside the scope of the coverage afforded by the relevant insurance policy.  (Id. at 10–14.)

A review of the docket reveals that service of the complaint upon Defendant was effectuated as follows.  On May 18, 2023, Deputy Erin Reddington of the Cumberland County Sheriff's Office personally served a copy of the complaint upon Defendant at Cumberland County Prison, where he is currently an inmate, establishing a June 8, 2023 deadline for an answer to be filed.  (Doc. No. 5); see Fed. R. Civ. P. 12(a).  Defendant, however, has failed to appear, answer, move, or otherwise respond to Plaintiff's complaint.

On June 12, 2023, Plaintiff filed a request with the Clerk of Court for an entry of default pursuant to Federal Rule of Civil Procedure 55(a).  (Doc. No. 7.)  The Clerk of Court entered default on June 15, 2023 (Doc. No. 8), and Plaintiff filed a motion for default judgment (Doc. No. 9) with a brief in support (Doc. No. 10) the following day.  Because Defendant has not responded to the pending motion for default judgment, the Court deems it unopposed under Local Rule 7.6.  Accordingly, Plaintiff's motion is ripe for disposition.

## II. LEGAL STANDARD

Default judgments are governed by a two-step process set forth under Rule 55 of the Federal Rules of Civil Procedure.  An entry of default by the Clerk of Court under Rule 55(a) is a prerequisite to a later entry of a default judgment under Rule 55(b).  See 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2682 (3d ed. 2007) (noting that, "[p]rior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)").  Once the Clerk of Court has entered a default, the party seeking the default may then move the court to enter a default judgment under Rule 55(b)(2).  Entry of default does not entitle a claimant to default judgment as a matter of

right.  See 10 James Wm. Moore et al., Moore's Federal Practice § 55.31 (Matthew Bender ed. 2010).  Indeed, it is well settled that decisions relating to the entry of default judgments are committed to the sound discretion of the district court.  See Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987).

Three factors control the exercise of the district court's discretion in assessing whether default judgment should be granted following the entry of default: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."  See Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000) (citing United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984)).  Even so, a court may "enter a default judgment based solely on the fact that the default occurred" without considering the Chamberlain factors if the defendant has been properly served but fails to appear, plead, or defend an action.  See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 177 n.9 (3d Cir. 1990).

"A finding that default judgment is appropriate, however, is not the end of the inquiry."  Martin v. Nat'l Check Recovery Servs., LLC, No. 1:12-cv-01230, 2016 WL 3670849, at *1 (M.D. Pa. July 11, 2016).  Prior to entering a default judgment, the Court must also determine whether the "unchallenged facts constitute a legitimate cause of action."  See Wright et al., supra, at § 2688; Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd., 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008) (stating that, "before granting a default judgment, the Court must . . . ascertain whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law'" (quoting Directv, Inc. v. Asher, No. 03-cv-01969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006))).  In conducting this inquiry, "the well-pleaded, factual allegations of the complaint . . . are accepted as true and treated as though they

were established by proof." <u>See</u> <u>E. Elec. Corp. of N.J. v. Shoemaker Const. Co.</u>, 652 F. Supp. 2d

599, 605 (E.D. Pa. 2009).  While the Court must accept as true the well-pleaded factual

allegations of the complaint, the Court need not accept the moving party's factual allegations or

legal conclusions relating to the amount of damages.  <u>See</u> <u>Comdyne I, Inc. v. Corbin</u>, 908 F.2d

1142, 1149 (3d Cir. 1990).

## III.    DISCUSSION

Under the Declaratory Judgment Act ("DJA"), federal courts "may declare the rights and

other legal relations of any interested party seeking such declaration, whether or not further relief

is or could be sought."  <u>See</u> 28 U.S.C. § 2201(a).  A court's "discretion to exercise jurisdiction is

somewhat complicated in an insurance context," <u>see</u> <u>Colony Ins. Co. v. Troensa Constr., Inc.</u>,

No. 17-cv-03577, 2018 WL 4676038, at *6 (D.N.J. Sept. 28, 2018), and where, as here, an

insurance company seeks a judicial declaration that it need not continue defending a party in an

underlying state proceeding, courts exercise caution before asserting jurisdiction, <u>see</u> <u>Certain</u>

<u>Underwriters at Lloyd's, London v. Good Night Nursing Agency, LLC</u>, No. 21-cv-07666, 2022

WL 1137302, at *5 (D.N.J. Apr. 18, 2022); <u>see, e.g.</u>, <u>Zurich Am. Ins. Co. v. Gutowski</u>, No. 22-

cv-02834, 2022 WL 17539105, at *7 (E.D. Pa. Dec. 8, 2022) (explaining that courts "must

determine whether to exercise . . . jurisdiction under the DJA"; <u>i.e.</u>, whether the circumstances of

the case warrant declining jurisdiction).  Accordingly, before considering the merits of Plaintiff's

motion, this Court will determine whether it should exercise jurisdiction over the pending

declaratory judgment action.

### A.      Whether the Court Should Exercise Jurisdiction Over this Action

#### 1.      Applicable Legal Standard

The Court's discretion to exercise jurisdiction over the pending declaratory judgment action turns on a two-step inquiry.  At the first step, the Court must determine whether there is a parallel state proceeding.  "[P]arallel proceedings are those that are 'truly duplicative,' that is, when the parties and the claims are 'identical,' or at least 'effectively the same.'"  Kelly v. Maxum Specialty Ins. Grp., 868 F.3d 274, 285 (3d Cir. 2017).  The presence of a parallel proceeding weighs against exercising jurisdiction, whereas "the absence of [a] pending parallel state proceedin[g] militates significantly in favor of exercising jurisdiction[.]"  See Reifer v. Westport Ins. Corp., 751 F.3d 129, 144 (3d Cir. 2014).  At the second step, the Court must consider the following non-exhaustive factors articulated in Reifer:

(1)      the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;

(2)      the convenience of the parties;

(3)      the public interest in settlement of the uncertainty of obligation;

(4)      the availability and relative convenience of other remedies;

(5)      a general policy of restraint when the same issues are pending in a state court;

(6)      avoidance of duplicative litigation.

(7)      prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and

(8)      (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

See id. at 146; see also DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co., 10 F.4th 192, 196–97 (3d Cir. 2021) (same).  In the insurance context, the Court must also consider the "additional guidance" from State Auto Insurance Cos. v. Summy, 234 F.3d 131 (3d Cir. 2000), which held

that "when applicable state law is 'uncertain or undetermined, district courts should be particularly reluctant' to exercise DJA jurisdiction," and further cautioned that "district courts are limited to predicting—rather than establishing—state law[.]"  See <u>DiAnoia's Eatery, LLC</u>, 10 F.4th at 197 (quoting <u>Summy</u>, 234 F.3d at 135).

### 2.    Analysis

#### a.    Whether the Underlying State Court Action is a Parallel Proceeding

Unless all the parties to a federal action are also parties to an underlying state action, the underlying state action generally "cannot constitute a parallel . . . proceeding."  See <u>Zurich Am. Ins. Co.</u>, 2022 WL 17539105, at *8; <u>see, e.g.</u>, <u>Homesite Ins. Co. v. Neary</u>, No. 17-cv-02297, 2017 WL 5172294, at *3 (E.D. Pa. Nov. 8, 2017) (concluding that "there is no pending parallel state proceeding" because the plaintiff "is not a party to the civil action in the Court of Common Pleas and no action for declaratory relief has been filed in that court").  Moreover, there is a "<u>per se</u> presumption that an insurer's declaratory judgment action is distinct from underlying tort actions in state court where the insurer is a non-party."  See <u>Colony Ins. Co.</u>, 2018 WL 4676038, at *7 (citing <u>Kelly</u>, 868 F.3d at 287).

Here, Plaintiff is not a party to the underlying state action, which concerns Defendant's liability under tort law—not Plaintiff's obligations under the insurance policy.  Accordingly, while both cases stem from the same set of facts, they involve different parties and implicate distinct legal issues, meaning they are not parallel proceedings.  <u>See, e.g.</u>, <u>State Farm Mut. Auto. Ins. Co. v. Dabbene</u>, 511 F. Supp. 3d 600, 614 (E.D. Pa. 2021) (concluding that an insurance company's action seeking a declaratory judgment was not parallel or duplicative of an underlying action involving the same defendants because the question of whether an insurance "policy cover[ed] Defendants' potential liability in the underlying action" was found to be

6

"distinct from the question of whether Defendants were negligent").  This "militates significantly in favor of exercising jurisdiction[.]"  See Reifer, 751 F.3d at 144.  With this in mind, the Court turns to the eight (8) Reifer factors and Summy's additional guidance.

### b.   Whether this Court Should Exercise its Jurisdiction

The first Reifer factor considers whether "a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy[.]"  See Reifer, 751 F.3d at 146.  Here, a declaration from this Court that Defendant is not covered by the insurance policy would resolve any dispute regarding Plaintiff's obligation to Defendant.  See, e.g., Kelly, 868 F.3d at 288 (concluding that "[d]eclaratory relief by the District Court would unquestionably clarify and settle the dispute regarding" the extent of "obligations under the insurance policy").  Accordingly, the first Reifer factor weighs in favor of exercising jurisdiction.

The second Reifer factor considers "the convenience of the parties."  See Reifer, 751 F.3d at 146.  Plaintiff is a citizen of Ohio, and Defendant is a citizen of Pennsylvania.  (Doc. No. 1 at ¶¶ 1–3.)  Plaintiff cannot be inconvenienced by litigating this case in the forum of its choosing.  Defendant, a citizen of Pennsylvania, will similarly not be inconvenienced by litigating in this forum, which is located in the Middle District of Pennsylvania.  See also Colony Ins. Co., 2018 WL 4676038, at *8 (concluding that "none of the parties w[ould] be inconvenienced by having this matter adjudicated in the federal forum" after the plaintiff filed suit in New Jersey, where "all defendants . . . [we]re citizens").  Accordingly, the second Reifer factor weighs in favor of exercising jurisdiction.

The third Reifer factor considers "the public interest in settlement of the uncertainty of obligation."  See Reifer, 751 F.3d at 146.  The "public interest in settling the uncertainty of" Plaintiff's insurance "obligation weighs neither for or against a resolution in federal court."  See Scottsdale Ins. Co. v. RSE Inc., 303 F.R.D. 234, 240 (E.D. Pa. 2014); see also Landmark Am.

Ins. Co. v. Mandracchia, No. 18-cv-04949, 2019 WL 3934913, at *3 (E.D. Pa. Aug. 19, 2019) (same). Accordingly, the third Reifer factor is neutral.

The fourth Reifer factor considers "the availability and relative convenience of other remedies." See Reifer, 751 F.3d at 146. "Because this action already exists[,] it is arguably more convenient for the parties to litigate their insurance coverage dispute in this federal forum, rather than start anew in state court." Nationwide Prop. & Cas. Ins. Co. v. Zatyko, No. 16-cv-01010, 2016 WL 6804436, at *4 (E.D. Pa. Nov. 16, 2016); see Landmark Am. Ins. Co., 2019 WL 3934913, at *3 (same) (quoting Zatyko, 2016 WL 6804436, at *4). Accordingly, the fourth Reifer factor weighs in favor of exercising jurisdiction.

The fifth Reifer factor, as clarified by DiAnoia's Eatery, LLC, encourages a policy of restraint when the same issues are pending in state court "between the same parties, [but] not when the 'same issues' are merely the same legal questions pending in any state proceeding." See DiAnoia's Eatery, LLC, 10 F.4th at 206–07 (emphasis added). Although district courts may consider "whether the same legal question at issue in a declaratory judgment action is at issue in state court proceedings between different parties," the Third Circuit has questioned "how th[at] fact would ever militate against exercising jurisdiction." See id. Here, "the issue of [Plaintiff's] obligations to [Defendant] under the Policy is not pending in a state court proceeding." See Zurich Am. Ins. Co., 2022 WL 17539105, at *9. Accordingly, these proceedings do not share the same legal issues as defined by DiAnoia's Eatery, LLC, meaning the fifth Reifer factor weighs in favor of exercising jurisdiction.

Turning to the sixth Reifer factor, avoiding duplicative litigation, see Reifer, 751 F.3d at 146, the Court again notes that there is no underlying parallel proceeding involving the same parties in state court. As such, declining jurisdiction would needlessly result in Plaintiff having

to relitigate his pending claim in another forum.  See Kelly, 868 F.3d at 289 (noting that "[a]rguably, settling the dispute in the District Court may avoid duplicative litigation considering that the parties have already begun to litigate the issue of coverage in the federal forum"). Accordingly, this factor weighs in favor of exercising jurisdiction.

The seventh Reifer factor, which cautions against the use of declaratory judgment "as a method of procedural fencing or as a means to provide another forum in a race for res judicata," is inapplicable here because there is no parallel proceeding between the parties.  See Reifer, 751 F.3d at 146.

The eighth and final Reifer factor considers the "inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion."  See id.  Here, as discussed, supra, this case and the underlying action stem from the same set of facts, and Plaintiff has competing interests in both actions.  This could give rise to a possible conflict of interest.  See, e.g., Terra Nova Ins. Co. v. 900 Bar, Inc., 887 F.2d 1213, 1225 (3d Cir. 1989) (explaining that "[c]ommentators have noted the potential conflict of interest problem if 'the same factual question' lies at the heart of both an insurance coverage dispute and the underlying tort action").  Nevertheless, two considerations weigh against declining jurisdiction.  First, although each case stems from the same set of facts, Plaintiff's claim here raises a distinct legal question and does not require this Court to pass judgment on the underlying issue of Defendant's potential negligence.  Second, to the extent there is a conflict of interest, the concern underlying the final Reifer factor would not be mitigated by declining jurisdiction.  Indeed, requiring a plaintiff to refile the same declaratory judgment action in state court would simply cause the "same moral hazard [in a] different forum."  See Scottsdale Ins. Co., 303 F.R.D. at 240; see, e.g., Foremost Ins. Co. v. Nosam, LLC,

No. 5:17-cv-02843, 2018 WL 417035, at *3 (E.D. Pa. Jan. 12, 2018) (finding the eighth <u>Reifer</u> factor neutral because "any inherent conflict of interest between [the plaintiff's] position in this declaratory judgment action and what might be raised in the state action would be the same regardless of whether the insurance coverage dispute is litigated in state or federal court"); <u>Homesite Ins. Co. v. Neary</u>, No. 17-cv-02297, 2017 WL 5172294, at *4 (E.D. Pa. Nov. 8, 2017) (same). Accordingly, the eighth <u>Reifer</u> factor is equivocal—weighing neither for nor against exercising jurisdiction.

Having addressed the <u>Reifer</u> factors—all of which favor exercising jurisdiction or weigh neither for nor against exercising jurisdiction—the Court turns to the Third Circuit's guidance in <u>Summy</u>. As previously noted, <u>Summy</u> cautions against issuing declaratory judgments over uncertain state-law issues. <u>See</u> <u>DiAnoia's Eatery, LLC</u>, 10 F.4th at 197. Here, Plaintiff seeks to clarify its obligations under an insurance policy. Interpreting an insurance policy, which is a contract, does not require resolving novel state-law issues. Accordingly, <u>Summy</u> does not counsel against exercising jurisdiction. For all of these reasons, the Court will exercise jurisdiction over the above-captioned action and consider the merits of Plaintiff's motion for default judgment.

### B.   Plaintiff's Motion for Default Judgment

Upon review of the record, including Plaintiff's complaint, motion for default judgment, supporting brief, and exhibits, the Court concludes that entry of default judgment against Defendant and in favor of Plaintiff is appropriate. At the outset, the Court finds that the three <u>Chamberlain</u> factors weigh in favor of granting Plaintiff's motion. First, Plaintiff will be prejudiced if the Court declines to enter default judgment, as it is unable to proceed with the action due to Defendant's failure to respond and has no other means of recovering against

Defendant.  See Broad. Music, Inc. v. Kujo Long, LLC, No. 14-cv-00449, 2014 WL 4059711, at *2 (M.D. Pa. Aug. 14, 2014) (finding that the "[p]laintiffs will be prejudiced . . . by their current inability to proceed with their action due to Defendants' failure to defend").  Second, Defendant has not asserted any meritorious defenses to Plaintiff's claims through the filing of an answer or other responsive pleading to the complaint, or through the filing of a response to the present motion.  Accordingly, the Court is unable to conclude from Defendant's silence that he has a viable, litigable defense.  See Laborers Loc. Union 158 v. Fred Shaffer Concrete, No. 10-cv-01524, 2011 WL 1397107, at *2 (M.D. Pa. Apr. 13, 2011).  Third, despite being served with a summons and copy of the complaint, Defendant has failed to enter an appearance or file an answer to the complaint and has offered no reasons for his failure to do so.  Accordingly, the Court cannot discern from the record any excuse or justification for Defendant's default apart from his own culpability.  See Innovative Office Prods., Inc. v. Amazon.com, Inc., No. 10-cv-04487, 2012 WL 1466512, at *3 (E.D. Pa. Apr. 26, 2012) (explaining that "[a] defendant's default, or its decision not to defend against allegations in a complaint, may be grounds for concluding that the defendant's actions are willful").  For these reasons, the Court is satisfied that the Chamberlain factors counsel in favor entering default judgment.

The Court next considers whether Plaintiff's allegations, taken as true, constitute a legitimate cause of action.  Plaintiff's three-count complaint asserts three grounds for why Defendant's conduct in the underlying action is not covered by the insurance policy: (1) it was not accidental, and it triggers (2) intentional injury and (3) bullying-based policy exclusions. (Doc. No. 1 at 10–14.)

"The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint." Kiely

11

ex rel. Feinstein v. Philadelphia Contributionship Ins. Co., 206 A.3d 1140, 1146 (Pa. Super. Ct. 2019).  When analyzing the complaint, "the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered.  Instead it is necessary to look at the factual allegations contained in the complaint."  See Mut. Ben. Ins. Co. v. Haver, 725 A.2d 743, 745 (Pa. 1999).

Based on the four corners of the insurance contract, the policy extends to claims "brought against an insured for damages because of bodily injury, property damage or personal injury caused by an occurrence," but excludes "bodily injury or property damage which is expected or intended by an insured"—even if the injury "is of a different kind, quality, or degree than initially expected or intended."  (Doc. No. 1-5 at 48, 55.)   The policy defines an "occurrence" as an "accident" (id. at 50), which the Pennsylvania Supreme Court has interpreted to mean "an unexpected and undesirable event occurring unintentionally" and involves "a degree of fortuity."  See Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 292 (2007).  "An injury therefore is not 'accidental' if the injury was the natural and expected result of the insured's actions."  Id.

Having considered the four corners of the insurance policy, the Court turns to the four corners of the Non-Parties' complaint.  In relevant part, the Non-Parties allege that:

- Defendant "blockaded" Ernest Singer's car;

- After Ernest Singer requested that Defendant move his vehicle, "Defendant refus[ed], and a verbal confrontation ensue[d]"; and

- "During the confrontation, Defendant, with reckless indifference for the safety of [Singer], shove[d] [Singer] backwards and cause[d] him to fall to the ground."

(Doc. No. 1-2 ¶¶ 6–8.)  It is plausible that Ernest Singer's injuries, which occurred after he was recklessly shoved by Defendant (id. ¶ 9), were not caused by an accident.  See, e.g., USAA Gen.

<u>Indem. Co. v. Floyd</u>, No. 19-cv-03820, 2019 WL 6310258, at *3 (E.D. Pa. Nov. 25, 2019) (concluding that a plaintiff's allegations about a defendant "walk[ing] across the street" and "recklessly and aggressively knock[ing] into" her ninety-seven-year-old father, causing him to fall, plausibly established that the defendant's conduct was not accidental). And because the insurance policy only extends to accidents, Plaintiff has a legitimate claim that it has no duty to defend or indemnify Defendant in the underlying action.[1]

## IV.   CONCLUSION

For all of the foregoing reasons, the Court will grant Plaintiff's motion for default judgment. (Doc. No. 9.) An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[1]   As Defendant's conduct falls outside the scope of coverage, the Court need not decide whether any policy exclusions apply.